Theodore Cary and others, in equity, *vs.* Nelson Herrin.

*Witness—competency of before a master in chancery. Statute—construction of.*

In a bill in equity brought by the heirs of a deceased mortgager to redeem his mortgage, the defendant is not a competent witness to testify, before a master, for what, and under what circumstances, his receipt to the deceased offered in evidence, by the plaintiffs, was given.

In c. 132 Pub. Laws of 1870 (R. S. c. 82, § 87, clause IV.), providing, that in an action by or against an executor, administrator, or other legal representative of a deceased person, in which his account books or other memoranda are used as evidence on either side, the other party may testify in relation thereto,—the phrase, "other memoranda," means memoranda made by the deceased only; and it does not include receipts given by the adverse party to the deceased in his life-time.

On exceptions.

Bill in equity by the plaintiffs, as heirs at law of Shepard Cary, late of Houlton, in this county, deceased, to redeem a mortgage of certain lands dated Nov. 22, 1854, and given by Shepard Cary to the defendant.

The case was given to C. P. Stetson, Esq., master, who, after hearing the parties, made his report to the court at the February term, 1871.

It appeared from the report, that among other evidence introduced before the master, the plaintiffs put in two receipts signed by the defendant, one dated March 13, 1858, and the other Nov. 1, 1858, of the following tenor:

"$400. Received four hundred dollars from S. Cary on account of interest."

"$700. Received of S. Cary, seven hundred dollars on note Lock to Sumner Whitney."

That the defendant, a witness in his own behalf, was asked by his counsel the following questions:

1. Please state the circumstances under which the seven hundred dollar receipt was given; and for what it was given; and what

was the agreement between the witness and the deceased at the time the receipt was given, respecting its appropriation ?

That the question was seasonably objected to by the plaintiffs, but the objection was overruled by the master, and the witness answered :

" Shepard Cary gave me a note signed by Sumner Whitney for $1,000. I collected it. I had the money, and he wanted I should let him have $300, and give him a receipt for the balance, the $700 was to go for extra interest. I went to Bangor with Mr. Lock and received payment there. Whitney note was collected three or four weeks before date of receipt. I let him have the $300. It was first agreed that the whole $1,000 should go that way."

2. " Please state the circumstances under which the receipt for $400 of March 13, 1858, was given. What was the agreement between yourself and Mr. Cary at the time, with reference to the appropriation of the amount, for what was it paid ?"

The plaintiffs also seasonably objected to this question, but the objection was overruled, and the witness answered :

"I called upon Mr. Cary to pay me some interest, and he gave me this, to be applied for extra interest."

Before the examination of Herrin, as a witness, the plaintiffs and other witnesses in their behalf had testified to facts and statements of the defendant, which occurred since the death of the plaintiffs' ancestor, Shepard Cary, who deceased Aug. 9, 1866 ; but they did not testify to facts which happened prior to his death. And the plaintiffs had put in evidence, also, the notes mentioned and claimed that they and the receipt should be allowed on the mortgage note before Herrin had testified.

Upon the presentation of the master's report, the plaintiffs moved that it be set aside ; that further proceedings be stayed thereon, until the further order of the court ; and that it be recommitted for the reason that the defendant was permitted to testify in answer to the questions above mentioned.

The presiding judge, pro forma, overruled the motions, and the plaintiffs alleged exceptions.

*Madigan & Donworth*, and *Powers*, for the plaintiffs.

*A. W. Paine*, for the defendant.

DICKERSON, J. The plaintiffs bring this bill as heirs of the late Shepard Cary, deceased, to redeem a mortgate given by him to the defendant. The case was committed to a master whose report was presented for acceptance at the February term of the supreme judicial court for the county of Aroostook, A. D. 1871. The plaintiffs made a motion to set aside the report and have it recommitted, but the presiding justice overruled the motion, *pro forma*, and ordered the report to be accepted, and the plaintiffs excepted.

The principal question reserved is, whether the master properly allowed the defendant to testify to facts that transpired prior to the death of the plaintiffs' ancestor, against their objection.

The correctness of this ruling is attempted to be maintained on two grounds:

I. Because it is in accordance with the rules of evidence in equity proceedings. The rules of evidence are, in general, the same in equity as they are at law, both as to the competency of witnesses and other evidence. It is true, that when the parties to a bill in equity are merely nominal or fiduciary, or the facts depend solely upon the knowledge of the parties, and oath is so balanced against oath that it becomes necessary to determine the degree of credit to be given to the parties, it is competent to examine both parties, not as witnesses for themselves or each other, but to enlighten the conscience of the court. In other cases, too, parties may be examined by mutual consent, under the discretion of the court. But it is never competent for a master in chancery to examine a party against the objection of the adverse party, when, from the position of the parties, such examination would give that party an undue advantage over the other. 3 Greenl. Ev. § 338.

The plaintiffs are parties in interest, and might be greatly prejudiced by the testimony of the defendant, not only as to facts that took place prior to the death of their ancestor, but which, also, were peculiarly within his knowledge. The ruling of the master

in admitting the defendant to testify against the objection of the plaintiffs was not in accordance with the rules of evidence in equity proceedings. Nor is it allowable under the R. S. of 1857, c. 82, § 83.

II. It is also claimed, that the ruling is authorized by the statute of 1870, c. 132. That act is as follows : " In an action by or against an executor, administrator, or other legal representative of a deceased person, in which his account books or other memoranda are used as evidence on either side, the party may testify in relation thereto."

The question naturally arises ; what " memoranda " are intended by the statute ? Is it the memoranda of the deceased person only, or the memoranda of either party ? Or is the language " other memoranda," broad enough to include any memoranda, that are used in evidence by either party ? If the statute means memoranda of the deceased person only, is it limited to memoranda made by such person, or does it extend, also, to memoranda made by the other party, which was the property of the deceased person, or in his possession ? It is clear, that when the memoranda, contemplated by the statute, whatever it is, is used in evidence by one party, the other party is a competent witness " in relation thereto." In this respect the right of the parties to testify is correlative. It is obvious from this provision, that it is not the purpose of the statute to give one party an undue advantage over the other, which would be the case, if the memoranda, mentioned in the statute, include memoranda made by one other than the deceased person, since to allow such party to testify to his own writing, when introduced by the representative party, would, in effect, be to give him the exclusive right of explaining such writing, the right of the representative party to testify in relation to a writing that he is a stranger to being wholly nugatory.

By the law as it stood before the act of 1870, when the books or other memoranda of a deceased person were used in evidence in an action by or against his legal representative, the adverse party was excluded from being a witness. The object of that statute

was to remove this disability in such cases, so that the living as well as the dead may be heard upon a subject in which both were originally alike interested. The " memoranda " mentioned in the statute means the memoranda made by the deceased person. The colloction of the words of the statute, as well as the reason for such provision, warrant this construction. If we insert " his " before " other " the meaning of the statute will not be changed, but rendered more obvious ; that qualifying word was undoubtedly omitted in the statute to avoid its repetition. The omission of the comma after " books " in the punctuation indicates this construction. If other memoranda than those made by the deceased person had been intended, the language would have been, " or any other memoranda." The meaning of the statute is the same as though it read " his books or his other memoranda."

To apply the provisions of this statute to memoranda made by the surviving party interested in it, would be to subject his administrator, to the same disadvantage practically, that the adverse party was under, in such cases, before the statute was passed. It was not the purpose of this statute to transfer an existing burden from one party to the other, but to remove it entirely. Nor if we supply the word " his," would the phrase, " his other memoranda," include the memoranda made by the adverse party, which might be the property of the deceased person at the time of his death, any more than the words " his books," include books made by the other party, but owned by the person deceased. Whether we consider the language of the statute, the difficulty to be remedied, or the purpose to be accomplished, the only rational conclusion is that the words " other memoranda " are intended to apply only to memoranda made by the person deceased. The statute of 1870 affords no warrant for admitting the testimony of the defendant.

As the other doings of the master complained of related to the evidence improperly admitted, it is unnecessary to consider that branch of the exceptions.                                        *Exceptions sustained.*

APPLETON, C. J.; CUTTING, KENT, WALTON, and DANFORTH, JJ., concurred.